IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ALI BOSTON,                          :    CIVIL ACTION
                                     :    No. 14-229
        Plaintiff,                   :
                                     :
    v.                               :
                                     :
VINCE MOONEY, et al.,                :
                                     :
        Respondents.                 :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        October 29, 2015

**Table of Contents**

I.   INTRODUCTION...........................................2
II.  BACKGROUND.............................................3
III. LEGAL STANDARD.........................................7
IV.  DISCUSSION ............................................9
     A.   Ineffective Assistance of Counsel Grounds .......9
          1.   Legal Standard ............................10
          2.   Analysis ..................................11
               a.   Plea offer............................12
                    i.   Reasonableness...................17
                    ii.  Prejudice........................24
               b.   Failure to request non-standard
                    informant jury instruction ...........29
                    i.   Arguable merit...................31
                    ii.  Reasonableness...................34
                    iii. Prejudice........................36
               c.   Failure to object to the testimony
                    of Detective List and witness
                    Jesse Estes under the
                    Confrontation Clause of the Sixth
                    Amendment of the U.S. Constitution.....38
                    i.   Arguable merit as to
                         Detective List's testimony........41
                    ii.  Arguable merit as to Jesse Estes's
                         testimony........................44
               d.   Failure to object to prosecutor's
                    summation.............................46

        B.    Due Process Clause Grounds........................ 49
V.    CERTIFICATE OF APPEALABILITY........................... 54
VI.   CONCLUSION............................................. 54

## I.    INTRODUCTION

        Petitioner Ali Boston is a state prisoner incarcerated at SCI-Coal Township, in Coal Township, Pennsylvania. He is serving a term of imprisonment of 25 1/2 to 51 years for third-degree murder and aggravated assault. Boston filed a petition under 28 U.S.C. § 2254 to vacate, set aside, or correct his sentence, making several claims, including the following: his conviction was obtained and sentence imposed in violation of the right to effective assistance of counsel; his conviction was obtained in violation of the Confrontation Clause of the Sixth Amendment; and his conviction was obtained in violation of the due process clause of the Fourteenth Amendment. See Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody 5, 7-8, ECF No. 1 [hereinafter "Pet."].

        Magistrate Judge Faith Angell ("Judge Angell") recommended denial of the petition without an evidentiary hearing and with no certificate of appealability. See R. & R. at 1, 58, ECF No. 14. Petitioner's counsel now raises several objections. Objs. to R.& R. of Magistrate Judge, ECF No. 16 [hereinafter "Objs."]. For the reasons that follow, the Court will deny Petitioner's Habeas Petition.

## II.   BACKGROUND

Petitioner was inside Dixon's Lounge in Darby Township, Pennsylvania, at approximately 1:00 a.m. on February 18, 2001, when a fight broke out. R. & R. at 1.[1] Several patrons, including Petitioner, left the bar to go outside. Id. Once outside, Petitioner brandished a firearm, which he used to shoot and kill Shawn Russell, as well as wound Ricardo Johnson and Charles Ross. Id. Thereafter, Petitioner was charged with first-degree murder, third-degree murder, two counts of aggravated assault for attempted serious bodily injury, carrying a concealed weapon without a license, voluntary manslaughter, and two counts of aggravated assault for causing bodily injury with a deadly weapon. See Commonwealth v. Boston, No. 549 EDA 2012, 2013 Pa. Super. Unpub. LEXIS 1491, at *1 (Pa. Super. Ct. Aug. 14, 2013).

Petitioner's first trial resulted in a hung jury. R. & R. at 18 n.16. Before the second trial began, the Commonwealth

---

[1]      In her Report and Recommendation, Judge Angell set forth the background of this case as it was recited by the trial court in Commonwealth v. Boston, No. 5657-05, slip op. at 1-13 (Del. Cty. Ct. Cm. Pl. Apr. 28, 2008). Judge Angell likewise provided citations for Commonwealth v. Boston, No. 549 EDA 2012, 2013 Pa. Super. Unpub. LEXIS 1491 (Pa. Super. Ct. Aug 14, 2013) and Commonwealth v. Boston, 976 A.2d 1198 (Pa. Super. 2009) (unpublished table decision), as well as the various filings and transcripts arising throughout the course of these proceedings. For purposes of clarity and brevity, citations will be to the Report and Recommendation unless otherwise noted.

extended a plea offer to Petitioner, which would have permitted Petitioner to plead guilty to third-degree murder in exchange for a six- to twenty-year prison term. Id. at 18. Petitioner rejected the plea offer, electing instead to proceed with the second trial. Id. At the conclusion of the second trial, the jury convicted Petitioner of third-degree murder, carrying a concealed firearm without a license, and four counts of aggravated assault. Id. For this conviction, Petitioner received an aggregate sentence of 25 ½ to 51 years in prison. Id. Tariq Karim El-Shabazz represented Petitioner throughout trial and sentencing. Commonwealth v. Boston, No. 5657-05, slip op. at (C.C.P. Del. Cty. Apr. 28, 2008).

Petitioner subsequently filed post-sentence motions[2] and supplemental post-sentence motions in the trial court, which were denied. R. & R. at 8-9. Petitioner timely appealed to the Superior Court of Pennsylvania, which affirmed the judgment. Id. at 9.

After the Pennsylvania Supreme Court denied Petitioner's application for an allowance of appeal,

---

[2]     In his post-sentence motions, Petitioner sought a new trial on the following grounds: (1) the verdict was against the great weight of the evidence; (2) the verdict was contrary to law; (3) the trial court erred in admitting a recording of a person yelling "He's got a gun," from which the jury made the unreasonable inference that the statement was referring to Petitioner; and (4) the trial court erred in denying Petitioner's Motion for a Mistrial. R. & R. at 8 n.7.

Commonwealth v. Boston, 983 A.2d 1246 (Pa. 2009) (unpublished table decision), Petitioner filed a timely petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541-9546, claiming ineffective assistance of counsel for failure to "(1) give competent professional advice concerning the Commonwealth's plea offer, (2) request a non-standard jury instruction on government informants, (3) object to hearsay under the Confrontation Clause, and (4) object to improper prosecutorial remarks at summation." R. & R. at 10. After holding an evidentiary hearing, the PCRA court denied PCRA relief on January 13, 2012. See Pet. Ex. 1 at 1, ECF No. 3.

Thereafter, Petitioner timely appealed to the Pennsylvania Superior Court, raising three issues for the court's consideration.[3] R. & R. at 10-11. On review, the Superior

---

[3]      The three grounds are as follows:

1) Whether the PCRA court erred when it ruled that a criminal defense attorney's performance is not objectively deficient when he fails to (A) give his client the benefit of reasonable professional advice in connection with a very favorable plea offer; (B) recommend that the client accept a very favorable plea offer; [and/or] (C) inform the client of the strengths and weaknesses of the state's case and the probable outcome of a trial?

2) Whether the PCRA court erred when it failed to conduct a probing inquiry for prejudice and when it did not consider as objective evidence of the prejudice component of Strickland [v. Washington, 466 U.S. 668 (1984),] the enormous difference between the sentence imposed and the sentence that would have been

Court affirmed the lower court's denial of PCRA relief. R. & R. at 11. Petitioner did not seek allocatur in the Pennsylvania Supreme Court.[4] Id.

On January 14, 2014, Petitioner filed the present habeas petition under 28 U.S.C. § 2254. Pet., ECF No. 1. Petitioner raised the following issues: (1) "[t]he conviction was obtained and sentence imposed in violation of the right to effective assistance of counsel"; (2) "[t]he conviction was obtained in violation of the Confrontation Clause of the Sixth Amendment"; and (3) "[t]he conviction was obtained in violation

---

imposed had the client accepted the plea offer, the willingness to plead evidenced by the Appellant's counteroffer, and the willingness to consistently follow counsel's advice?

3) Whether the PCRA court erred when it ruled that trial counsel's performance was not objectively deficient and did not cause prejudice when counsel failed to (A) request an instruction informing the jury that the testimony of informant Kendall Smith should be received with great care and caution as a result of the benefits he received in exchange for his testimony against Appellant; (B) object to implied accusations as violations of the confrontation clause of the Sixth Amendment; and (C) object to the prosecution's improper closing argument?

R. & R. at 11 (emphasis in original).

[4]     Seeking allocatur by the Pennsylvania Supreme Court is not part of the standard appeals process in post-conviction relief matters. See In re Exhaustion of State Remedies in Criminal & Post-Conviction Relief Cases, No. 218 Jud. Admin. Docket No. 1 (Pa. May 9, 2000) (per curiam); see also Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004); Mattis v. Vaughn, 128 F. Supp. 2d 249, 261 (E.D. Pa. 2001).

of the due process clause of the Fourteenth Amendment." See Pet. 5, 7-8, ECF No. 1. The Commonwealth filed an Answer to the Petition, denying each of Petitioner's assertions and contending he is not entitled to federal habeas corpus relief. See generally Answer to Pet. Seeking Federal Habeas Corpus Relief, ECF No. 9 [hereinafter "Answer"]. Petitioner then filed a response memorandum on September 8, 2014. See Pet'r's Resp. to State's Answer & Mem., ECF No. 12 [hereinafter "Resp."].

Upon referral, Magistrate Judge Angell issued a Report and Recommendation ("R. & R."), recommending that this Court deny the petition without an evidentiary hearing or certificate of appealability. R. & R. at 1, 58. Petitioner filed objections to the Magistrate's R. & R. on January 28, 2015. See generally Objs.

## III. LEGAL STANDARD

A district court may refer an application for a writ of habeas corpus to a U.S. Magistrate Judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B). A prisoner then may object to the magistrate judge's report and recommendations within fourteen days after being served with a copy thereof. See 28 U.S.C. § 636(b)(1); E.D. Pa. Civ. R. 72.1(IV)(b). The Court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to

which objection is made." 28 U.S.C. § 636(b)(1). The district court does not review general objections. See Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) ("We have provided that § 636(b)(1) requires district courts to review such objections de novo unless the objection is not timely or not specific." (internal quotation marks omitted)). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

On habeas review, the court must determine whether the state court's adjudication of the claims raised was (1) contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or (2) based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), on habeas review, a federal court must presume that factual findings of state trial and appellate courts are correct. Stevens v. Del. Corr. Ctr., 295 F.3d 361, 368 (3d Cir. 2002). This presumption can be overcome only on the basis of clear and convincing evidence to the contrary. See Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("AEDPA requires a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification

that there was an error . . . beyond any possibility for
fairminded disagreement. If this standard is difficult to meet--
and it is--that is because it was meant to be."(internal
citations omitted)(internal quotation marks omitted)(alterations
in original)); Stevens, 295 F.3d at 368.

## IV.  DISCUSSION

Judge Angell recommends that the Petition be denied
and dismissed without an evidentiary hearing. R. & R. at 58.
Judge Angell further recommends that to the Court should not
issue a certificate of appealability. Id. Petitioner now objects
to the findings and recommendations of Judge Angell on various
grounds,[5] which are mostly reiterations of Petitioner's original
arguments. These arguments are analyzed below.

### A.   Ineffective Assistance of Counsel Grounds

Petitioner first claims that his conviction was
obtained and his sentence imposed in violation of his right to
effective assistance of counsel.

---

[5]      Petitioner did not object to Judge Angell's
recommendation as to the separate Confrontation Clause issue.
See generally Objs. Instead, Petitioner's only objection on
Confrontation Clause grounds pertains to the ineffective
assistance of counsel claim. See Objs. 25-30. The Court will
address only those grounds to which Petitioner objects. See Fed.
R. Civ. P. 72(b)(3) advisory committee's note to the 1991
amendment. Therefore, the Court will approve and adopt Judge
Angell's recommendation that the separate Confrontation Clause
claim be dismissed. See R. & R. at 55.

1.  <u>Legal Standard</u>

The Sixth Amendment right to counsel is the right to
effective assistance of counsel. <u>See</u> <u>Strickland v. Washington</u>,
466 U.S. 668, 686 (1984). To warrant reversal of a conviction on
ineffective assistance of counsel grounds, a prisoner must show
that (1) his counsel's performance was deficient, and (2) the
deficient performance prejudiced his defense. <u>See</u> <u>id.</u> at 687;
<u>Holland v. Horn</u>, 519 F.3d 107, 120 (3d Cir. 2008). The
principles governing ineffective assistance of counsel claims
under the Sixth Amendment apply in collateral proceedings
attacking a prisoner's sentence. <u>See</u> <u>Strickland</u>, 466 U.S. at
697-98.

To prove deficient performance, a prisoner must show
that his "counsel's representation fell below an objective
standard of reasonableness." <u>Id.</u> at 688. The court will consider
whether counsel's performance was reasonable under all of the
circumstances. <u>Id.</u> Furthermore, the court's "scrutiny of
counsel's performance must be highly deferential." <u>Id.</u> at 689.
That is, there is a "strong presumption that counsel's conduct
falls within the wide range of reasonable professional
assistance." <u>Id.</u> In raising an ineffective assistance of counsel
claim, the petitioner must first identify the acts or omissions
that are allegedly not the result of "reasonable professional
judgment." <u>Id.</u> at 690. Next, the court must determine whether

10

those acts or omissions fall outside of the "wide range of
professionally competent assistance." Id.

To prove prejudice, a convicted defendant must
affirmatively prove that counsel's alleged errors "actually had
an adverse effect on the defense." Id. at 693. "The defendant
must show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different. A reasonable probability is a
probability sufficient to undermine confidence in the outcome."
Id. at 694.

If Petitioner fails to satisfy either prong of the
Strickland standard, his claim will fail. Id. at 697.

2.  Analysis

Petitioner specifically alleges the following:

> Counsel failed to consult with the
> petitioner and give him the benefit of reasonable
> professional advice in connection with the
> prosecution's offer of 6-20 years' imprisonment.
> Counsel never advised petitioner to take the offer.
> Counsel did not discuss with petitioner the probable
> outcome of the trial. Petitioner testified that if
> properly advised, he would have accepted the offer of
> 6-20. Counsel's performance was deficient for failing
> to request an instruction that Kendall Smith's
> testimony should be considered with great care and
> caution because of the benefits Smith received in
> exchange for his testimony against Boston; failing to
> object to Detective List's testimony indicating that
> various interviews of various witnesses led him to
> conclude that Boston was the shooter all in violation
> of the Confrontation Clause; failing to object to the

11

prosecutor's closing argument which was based on facts
not in evidence.

Pet. 5.

In essence, the claim can be broken down into four
parts: (1) counsel's failure to adequately recommend that
Petitioner take the plea offer; (2) counsel's failure to request
the non-standard informant jury instruction; (3) counsel's
failure to object to the testimony of Detective List and Jesse
Estes under the Confrontation Clause; and (4) counsel's failure
to object to the prosecutor's summation during closing argument.
Each argument will be discussed in turn.

a.   Plea offer

Petitioner first claims ineffective assistance of
counsel based on Mr. El-Shabazz's failure to adequately
recommend that Petitioner take the plea offer. In his petition,
Petitioner specifically alleges that

> Attorney El-Shabazz . . . failed to do the following:
> (1) give a professional recommendation whether to
> accept or reject the plea offer; (2) adequately
> explain the strengths and weaknesses of the
> Commonwealth's case, including the admission of new
> evidence such as a hearsay statement from the
> surveillance videotape . . . and that a deputy
> attorney general for the State of Delaware would
> testify that nothing could be done to enforce a
> cooperating plea agreement against witness Kendall
> Smith . . . ; (3) adequately explain Boston's
> sentencing exposure and parole eligibility if
> convicted; (4) honor a request for Boston to discuss
> the plea offer with his family; and (5) give a candid
> estimate on the probable outcome at trial. Finally,

12

> Attorney El-Shabazz allegedly (6) misled Boston into
> believing there was a good chance of prevailing at
> trial. Boston avers that, but for these alleged
> deficiencies, he would have accepted the plea
> offer . . . Boston maintains his innocence,
> notwithstanding the convictions.

R. & R. at 19.

It is well established that under the Sixth Amendment,
a criminal defendant is entitled to the assistance of counsel
during the plea bargaining process. Missouri v. Frye, 132 S. Ct.
1399, 1407-08 (2012). "[A]s a general rule, defense counsel has
the duty to communicate formal offers from the prosecution to
accept a plea on terms and conditions that may be favorable to
the accused." Id. at 1408. And "current ethics provide that
defense counsel 'should advise the defendant of the alternatives
available and address considerations deemed important by defense
counsel or the defendant in reaching a decision." R. & R. at 29
(citing ABA Standards for Criminal Justice, Standard 14-3.2(b)
(3d ed. 1999)). When a plea bargain is offered, "a defendant has
a right to effective assistance of counsel in considering
whether to accept it. If that right is denied, prejudice can be
shown if loss of the plea opportunity led to a trial resulting
in a conviction on more serious charges or the imposition of a
more severe sentence." Lafler v. Cooper, 132 S. Ct. 1376, 1387
(2012).

13

The federal habeas court must heed the statutory presumption, under 28 U.S.C. § 2254(d), that the state court's factual findings are correct to the extent that such facts are supported by the record. Alston v. Redman, 34 F.3d 1237, 1253 (3d Cir. 1994). The challenging petitioner "bears the burden of rebutting the state court's factual findings by clear and convincing evidence." Titlow, 134 S. Ct. at 15 (internal citations omitted).

Here, as explained by the PCRA court before the second trial commenced,

> the Commonwealth made [Petitioner] Ali Boston a negotiated plea offer of 6-to-20 years of imprisonment in return for a guilty plea on third-degree murder. He rejected it and took his chan[c]es with the jury (and the discretion of a sentencing judge). The jury convicted him on that charge, plus possession of a firearm without a license and four counts of aggravated assault, and Boston received a total of 25 ½ to 51 years in prison. Here, it is uncontested that trial counsel advised Boston that it was a "good offer" given the strength of the Commonwealth's case. The precise matter at issue, however, involves the decision by trial counsel not to specifically recommend acceptance of the plea offer in order to stave off a future challenge under the Post Conviction Relief Act (PCRA) . . . of an unlawfully-induced guilty plea. Now, among other things, Boston asserts in this PCRA action that trial counsel was ineffective for doing just that: failing to specifically recommend acceptance of the plea offer. Although arguably meritorious on the surface, a closer look at this ground revealed that it was really a not-so-veiled argument that trial counsel owed a duty to persuade Boston to accept the plea offer where, under the facts and circumstance of this case, it was not.

R. & R. at 18-19 (internal citations omitted).

14

Judge Angell found that the state courts' conclusion that counsel did not render ineffective assistance in regard to this claim was not an unreasonable application of the Strickland standard, nor was it based on an unreasonable determination of the facts in light of the evidence. Id. at 33. Judge Angell further found that Mr. El-Shabazz properly advised Petitioner about the Commonwealth's plea offer and properly gave Petitioner professional advice concerning the strengths and weaknesses of the Commonwealth's case, as well as the pros and cons in regard to accepting the plea offer. Id. Therefore, Judge Angell concluded that federal habeas relief is not warranted for this issue. Id.

Petitioner objects to Judge Angell's recommendation. According to Petitioner, the state court decisions failed to assess Mr. El-Shabazz's conduct in light of "prevailing professional norms," as required by Strickland. Objs. 14, 16. Petitioner alleges that Mr. El-Shabazz, contrary to professional norms, failed to affirmatively recommend that Petitioner take the plea offer. Id. at 18.

In support of his objection, Petitioner cites testimony from the PCRA hearing, during which Mr. El-Shabazz stated his obligation as defense counsel as he understood it:

> First to take the plea back to him, to advise him of
> the pros and cons, the strengths and weaknesses of the

15

case, to suggest to him how I see the evidence coming
in, suggest to him what I think our defenses are, and
then indicate to him unequivocally that the decision
to plea or go to trial is your decision alone. I'm not
going to make that decision for you.

Objs. 19.

During the hearing, Mr. El-Shabazz also explained his

recollection of the discussions with Petitioner as follows:

I never told him to take the plea offer. What I told
him was--I evaluated the case. I told him what I
thought the pros and cons were. And in fact, if--when
he asked me specifically what do you think I should
do, I said you should do what you think you should do.
What's best for you? I can't tell you to take the plea
and I can't tell you not to take the plea.

Objs. 20-21. Petitioner further cites the following exchange

from the hearing:

[STURM]. Okay. And you didn't say . . . I am telling
you it's your decision but it's in your best interest
to take this plea?

[EL-SHABAZZ]. I did tell him I'm bringing my
experience. I did tell him that it's his decision.
Never ever told him I want you to take this plea, I'm
telling you to take this plea, or anything to that
degree.

[STURM]. I'm giving you my opinion that this is the
best thing for you to  do?

[EL-SHABAZZ]: The only opinion I gave him--I never said
that. The only opinion I gave him was what the pros
were with the Commonwealth and what the weaknesses were
with  the case. And then I told him the decision was
yours  to make. I can't make it for you. Your parents
can't make it for you.

Objs. 21.

Petitioner alleges that this testimony shows Mr. El-Shabazz customarily failed to "mak[e] a recommendation that the best way to resolve the case is to take the favorable plea offer," which, according to Petitioner, is required by Lafler and the ABA Standards to provide effective assistance of counsel. Objs. 19.

### i.    Reasonableness

In assessing Petitioner's claim under the reasonableness prong of the Strickland standard, the PCRA court determined that Mr. El-Shabazz reasonably discharged his duties as a matter of law. R. & R. at 25. The PCRA court parsed out the analysis into four parts: (1) the duty to communicate and adequately explain the matter, (2) the duty to estimate the probable outcome of trial, (3) the duty to give a professional recommendation, and (4) the duty to persuade. See id. at 24-31.

First, the PCRA court addressed Mr. El-Shabazz's duty to communicate and adequately explain the matter. Id. at 25-26. The duty of defense counsel is not only to give notice of a plea offer to the defendant, but also to timely and adequately explain the matter so the defendant may reach an informed decision. See Pa. R. Prof'l Conduct 1.4(a)(1), (b); Commonwealth v. Chazin, 873 A.2d 732, 735 (Pa. Super. Ct. 2005). This duty requires counsel to provide an analysis of "the relative merits

17

of the offer" as compared to the strengths and weaknesses of the case, R. & R. at 25 (citing Commonwealth v. Napper, 385 A.2d 521, 524 (Pa. Super. 1978)), and provide "an accurate calculation of the client's sentencing exposure if convicted." Id. (citing Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999)). Finally, the attorney must provide "a reasonable investigation on a possible defense and mitigating evidence." Id. (citing Commonwealth v. Mabie, 359 A.2d 369, 374 (Pa. 1976)).

The PCRA court found, and Judge Angell agreed, that "Attorney El-Shabazz explained the pros and cons of accepting the plea offer, the strength of the Commonwealth's case, including new evidence, and Boston's possible length of imprisonment and eligibility for parole." R. & R. at 25. The court rejected as incredible Petitioner's allegation that Mr. El-Shabazz never explained the potential of life imprisonment for a first-degree murder conviction because "[t]o believe Boston would mean that Attorney El-Shabazz was less competent than a first-year law student rather than a seasoned attorney with two decades of experience." Id. Moreover, during a pretrial hearing on June 5, 2007, Petitioner "remained silent while his representative, Attorney El-Shabazz, informed Judge [Wright] in open-court that they had discussed the pros and cons of the plea offer, in addition to discussions between Attorney El-Shabazz

18

and Boston's mother." Id. Therefore, the court held that Mr. El-Shabazz did not violate his duty to communicate and adequately explain the matter. Id.

Second, the PCRA court addressed Mr. El-Shabazz's duty to estimate the probable outcome of trial. The PCRA court held as follows:

> As a case of first impression, unless success is virtually non-existent, this court believes a reasonable defense attorney may decline to estimate the probable outcome at trial. To hold otherwise would ask the impossible. While defense attorneys may recognize futility, it is our firm belief that trials, especially jury trials, are otherwise unpredictable.

Id. at 26. Although a case of first impression for the PCRA court, the court cited the ABA Standards for Criminal Justice, Standards 4-6.2, 14-3.2(b) (3d ed. 1993) for the proposition that no specific estimate of the trial outcome is required, but rather, defense counsel "should advise the defendant of the alternatives available and address considerations deemed important by defense counsel or the defendant in reaching a decision." R. & R. at 26-27.

The PCRA court thus found that Mr. El-Shabazz's refusal to quantify any probability of success at trial was reasonable because the case was very triable, with the Commonwealth's success dependent on the credibility of its witnesses. Id. at 27. As the court reasoned, "defense attorneys cannot be odds-makers," and in this case, "Attorney El-Shabazz

competently determined that an estimate would be fraught with danger." Id. Therefore, the court held Mr. El-Shabazz did not violate any duty to estimate the probable outcome of trial with specificity.

Third, the PCRA court addressed Mr. El-Shabazz's duty to give a professional recommendation. Id. at 27-29. After dismissing the two cases on which Petitioner relied in his petition as inapplicable to the case at bar, the court explained that

> [t]here is no controlling authority in Pennsylvania for the proposition that defense counsel must give a professional recommendation as to what plea should be entered. In Napper, our Superior Court stated that defense counsel "may or must give the client the benefit of his professional advice on this crucial decision, and often he can protect the client adequately only by using a considerable amount of persuasion to convince the client that one course or the other is in the client's best interest." 385 A.2d at 524 (quoting 1 ANTHONY G. AMSTERDAM ET AL., TRIAL MANUAL FOR THE DEFENSE OF CRIMINAL CASES 2/143 (1967)).

Id. at 28-29.

Although the court determined there is no per se rule that defense counsel must always give a professional recommendation as to whether to accept a plea offer, Petitioner here specifically requested Mr. El-Shabazz's opinion whether to accept the plea offer. Id. at 29. The PCRA court asserted that "where actually requested by Boston under the facts and

circumstances of this case, the court believes Attorney El-Shabazz did have such a duty and properly discharged it." Id.

Mr. El-Shabazz explained that the final decision belonged to Petitioner alone, but still stated "that it was [his] professional opinion that it was a good plea." Id. Petitioner admits that Mr. El-Shabazz advised that the offer was a "good deal" but nevertheless claims ineffective assistance of counsel. Id. at 22, 29. The PCRA court reasoned that Mr. El-Shabazz effectively and reasonably discharged his duty to give a professional recommendation and highlighted that there are no "magic words" for an attorney to use in such circumstances. Id. at 29-30. Therefore, the court held that Mr. El-Shabazz did not violate his duty to give a professional recommendation. Id. at 30.

Finally, the PCRA court addressed Petitioner's argument that Mr. El-Shabazz failed to discharge a so-called duty to persuade by doing "nothing to persuade the client from going to trial and persuading him to accept the offer." Id. But the court emphasized that defense counsel must respect a client's wishes as to whether to plead guilty under Pennsylvania Rule of Professional Conduct 1.2(a) and explained that at least three  circumstances are excepted from the general rule: (1) where the client has a diminished capacity, (2) where the client does not claim innocence, thereby materially limiting counsel's

21

ability to mount an ethical defense, and (3) where the client does not claim innocence but the strength of the government's case is such that the probability of acquittal is futile. Id. (citing cases for each situation).

Here, the PCRA court found that Mr. El-Shabazz reasonably recognized the case was triable and the Commonwealth's case was "hardly a slam-dunk." Id. (internal quotation marks omitted). Because Petitioner maintained his innocence and his trial chances were not futile, the PCRA court held that Mr. El-Shabazz owed no duty to persuade. Id. at 31. "Simply because Boston's jury returned a guilty verdict does not render Attorney El-Shabazz's conduct unreasonable." Id. Thus, based on its analysis of all four duties, the PCRA court concluded that Petitioner cannot prevail on this ineffective assistance claim under the reasonableness prong of Strickland. Id.

The Superior Court adopted the PCRA court's opinion, additionally addressing Lafler v. Cooper, 132 S. Ct. 1376 (2012) and Missouri v. Frye, 132 S. Ct. 1399 (2012), which were not available to the PCRA court at the time of its dismissal order. Id. The Superior Court explained that in Lafler and Frye, the United States Supreme Court established that "as a general rule, defense counsel has the duty to communicate formal plea offers

from the prosecution that may be favorable to the accused." R. &
R. at 32 (citing Frye, 132 S. Ct. at 1408).

However, even if counsel neglects this duty,
defendants still must demonstrate "a reasonable probability that
the plea would have been entered without the prosecution
canceling it or the trial court refusing to accept it." Frye,
132 S. Ct. at 1409. The Superior Court explained that

> unlike Frye where the defense attorney failed entirely
> to communicate the order to the defendant, the PCRA
> court credited Attorney El-Shabazz's testimony that he
> communicated the offer to [Petitioner] and spent a
> considerable amount of time explaining the pros and
> cons of the offer to [Petitioner]. Hence, we agree
> with the PCRA court's ultimate determination that
> [Petitioner] was not provided deficient representation
> by Attorney El-Shabazz, and that [Petitioner's]
> rejection of the plea offer was not based upon
> Attorney El-Shabazz's advice, or lack thereof, but
> upon [Petitioner's] belief that a critical prosecution
> witness was not going to appear at trial.

R. & R. at 32-33 (internal citations omitted).

Judge Angell agreed with the reasoning of the state
courts and found that the courts did not engage in an
unreasonable application of the Strickland standard or an
unreasonable determination of the facts in light of the
evidence. Id. at 33. Reviewing the record as a whole, this Court
also determines that Petitioner failed to satisfy the
reasonableness prong of the Strickland standard.

ii.    Prejudice

Even if Petitioner was able to successfully show deficient performance under the first prong of Strickland, he would then need to demonstrate that he suffered prejudice as a result of that deficient performance. Strickland, 466 U.S. at 691. When a claim of ineffective assistance is made in connection with the plea bargaining stage, the second prong of the Strickland analysis "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59 (1985). That is, the defendant must show that "but for counsel's deficient performance there is a reasonable probability he . . . would have accepted the guilty plea." Lafler, 132 S. Ct. at 1391; see also Frye, 132 S. Ct. at 1409–10. As such, Petitioner must "demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel," Frye, 132 S. Ct. at 1409, and that the state court's contrary conclusion "'was based on an unreasonable determination of the facts' in light of the record before the state court," Harrington v. Richter, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(2)).

With this analytical framework in mind, the alleged ineffective performance must first be identified. Here, Petitioner alleges Mr. El-Shabazz was required to affirmatively

24

encourage Petitioner to take the favorable plea offer. The next step is to ask whether the alleged ineffective performance-- failing to affirmatively encourage acceptance of the offer-- affected the outcome of the plea process. See Hill, 474 U.S. at 59. That is, but for Mr. El-Shabazz's failure to affirmatively encourage Petitioner to take the plea offer, would Petitioner have done so?

Here, it is undisputed that Petitioner's sentence, which followed a conviction was substantially longer than the sentence he would have received if he had accepted the Commonwealth's plea offer. See Lafler, 132 S. Ct. at 1387 (explaining that "prejudice can be shown if loss of the plea opportunity led to a trial resulting in . . . the imposition of a more severe sentence"). While the plea bargain would have resulted in a sentence of 6 to 20 years, Petitioner received a sentence of 25 ½ to 51 years. R. & R. at 8, 19.

But the state court found, based on the record and the hearing, that even if Mr. El-Shabazz had affirmatively recommended Petitioner take the plea, Petitioner would not have accepted the plea due to his steadfast belief that Mr. Smith would not testify at trial. The state court determined that

> the real reason for rejecting the plea offer owed to
> Boston's belief that Kendall Smith would not testify.
> It is plausible because, in a world of popular
> television shows on forensic crime-scene
> investigation, Boston's risk-taking was not irrational

25

if things were as he believed them to be. If Smith had
actually absconded then the Commonwealth only had one
other eyewitness to the shooting, Hammond, who could
not identify Boston from a photo-array. There was no
physical evidence captur[ing] Boston in the act of
possessing or discharging a firearm, a jury in the
first trial deadlocked, John could not identify the
gunman and Ross was dead. Boston therefore took his
chances of acquittal without Smith's testimony. Even
though Attorney El-Shabazz tried to correct these
decisive misunderstandings, Boston foolishly clung to
them. In so doing Boston chose to disbelieve, not only
the candor of Assistant District Attorney Mann, but
even his own attorney's assurances that Smith was
arrested under a material witness warrant. Boston paid
no heed to his own attorney's advice that the
Commonwealth still had a strong case even without
Smith's testimony. Boston therefore has no one but
himself to blame for his current predicament.

Id. at 31-32. Judge Angell, showing the requisite deference to

the state courts' findings of facts, agreed with the state

courts' determination. Id. at 33.

In his objections to Judge Angell's R. & R.,

Petitioner now attempts to argue that Mr. El-Shabazz provided

ineffective assistance in failing to explain all possible

scenarios surrounding Mr. Smith's testimony during the second

trial. He contends that,

[a]ssuming for the sake of argument only that
petitioner rejected the 6- 20 year plea offer because
he was convinced Kendall Smith would not appear for
the second trial, then Mr. El-Shabazz was totally
incompetent for failing to consult with, and advise
petitioner that if Mr. Smith failed to appear or
refused to testify or went south on the prosecutor, or
claimed amnesia, the prosecution would simply call a
nice police officer to the stand to read into evidence
the sworn testimony of Mr. Smith given at the first
trial.

26

Objs. 17.

But Petitioner never raised these grounds in his petition. See Pet. 5. This basis for Mr. El-Shabazz's ineffectiveness appears for the first time in his objections to Judge Angell's R. & R.[6]

Under Local Rule 72.1.IV(c), "[a]ll issues and evidence shall be presented to the magistrate judges, and unless the interest of justice requires it, new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge." E.D. Pa. Civ. R. 72.1.IV(c). As noted by the Ninth Circuit, "[t]he purpose of the Magistrate's Act would be frustrated if we were to require a district court to consider a claim presented for the first time after the party has fully litigated his claims before the magistrate judge and found that

---

[6]     Petitioner similarly attempted to insert in a post-PCRA hearing brief new allegations that Attorney El-Shabazz failed to (1) adequately guard the attorney-client privilege during plea offer discussions with Boston on June 5, 2007; (2) inform Boston on the possibility of a nolo contendere plea; (3) advise Boston that if he testified in his defense he would be impeached by a prior, crimen falsi conviction; and (4) undertake an independent investigation, in advance of trial, concerning Kendall Smith's probation and arrest under a material witness warrant. R. & R. at 26. The PCRA court explained that "[t]hese allegations are neither contained nor incorporated in Boston's petition or sworn affidavit" and therefore could not provide a basis for relief. Id.

27

they were unsuccessful." <u>Bolar v. Blodgett</u>, 29 F.3d 630, 1994 WL 374194, at *1 (9th Cir. 1994) (unpublished table decision).

Here, Petitioner's basis for ineffectiveness, as stated in his petition, was Mr. El-Shabazz's "refusal to provide his professional <u>opinion</u> as to whether a plea offer should be accepted or rejected." Mem. of Law Supporting Pet. for Habeas Corpus Under 28 U.S.C. 2254, at 34, ECF No. 3 (emphasis in original). Now, Petitioner attempts to raise a new basis for Mr. El-Shabazz's alleged ineffectiveness--that is, that Mr. El-Shabazz was required to explain that Mr. Smith's testimony could be admitted against Petitioner regardless of whether Mr. Smith appeared to testify live at trial. <u>See</u> Objs. 17. Because analyzing the merits of the new argument would undermine the purpose of the Magistrate Judge's role, the Court will refuse to review the new claims made in Petitioner's Objections.[7] <u>See</u> <u>Ramos v. Kyler</u>, No. 03-2051, 2004 WL 828363, at *5 (E.D. Pa. Apr. 12, 2004) (concluding that the court will not consider issues raised anew in a petitioner's objections).

In sum, Petitioner failed to show that counsel's performance was deficient with regard to the plea offer. Counsel advised Petitioner of the risks of trial, and Petitioner "armed

---

[7]     Moreover, Petitioner was on notice of the requirements of Local Civil Rule 72.1.IV(c), as it was explicitly stated in this Court's Order referring the case to Magistrate Judge Angell. <u>See</u> ECF No. 4.

with full knowledge of the ramifications of his decision, decided to reject the [ ] offer." United States v. Carter, 130 F.3d 1432, 1442 (10th Cir. 1997). Considering the great deference a federal court is required to give the state court's findings of fact, Titlow, 134 S. Ct. at 15, Petitioner is unable to establish that but for Mr. El-Shabazz's allegedly ineffective assistance, Petitioner would have accepted the plea offer.

Given the evidence, it cannot be said that the state courts' findings were contrary to, or unreasonable applications of, clearly established federal law. See 28 U.S.C. § 2254(d). Likewise, it cannot be said that the state courts' findings were based on unreasonable determinations of the facts in light of the evidence presented. Id. Petitioner's claim on these grounds is therefore dismissed.

b.    Failure to request non-standard informant jury instruction

Petitioner next claims that counsel was ineffective for failing to request an instruction that Mr. Smith's testimony "be considered with great care and caution because of the benefits Smith received in exchange for his testimony against Boston." Pet. 6. Petitioner specifically alleges that Mr. El-Shabazz should have requested the non-standard jury instruction on informants, commonly referred to as the "Devitt & Blackmar

Instruction."[8] R. & R. at 34 (citing Mem. of Law Supporting Pet.

for Habeas Corpus Under 28 U.S.C. 2254, at 16, ECF No. 3).

Upon review of the state courts' findings and

conclusions, Judge Angell determined that the state courts'

resolution of the issue was reasonable. R. & R. at 42. Judge

Angell found that the state courts neither contradicted nor

unreasonably applied federal law in denying this claim. Id.

Accordingly, Judge Angell recommended denying Petitioner federal

habeas relief on these grounds. Id.

In his Objections, Petitioner states that "[t]here was

no down side to requesting the instruction. No reasonable

attorney would have failed to request an informant instruction

---

[8]        The Devitt and Blackmar instruction states as follows:

The testimony of an informer who provides evidence
against a defendant for pay, or for immunity from
punishment, or for personal advantage or vindication,
must be examined and weighed by the jury with greater
care than the testimony of an ordinary witness. The
jury must determine whether the informer's testimony
has been affected by interest or by prejudice against
a defendant.

United States v. Bernard, 625 F.2d 854, 858 n.4 (9th Cir. 1980)
(quoting 1 Edward J. Devitt & Charles B. Blackmar, Federal Jury
Practice and Instructions § 17.02 (3d ed. 1977)). While a search
of Third Circuit case law reveals no case directly citing Devitt
and Blackmar's treatise, the language of an identical
instruction was considered an adequate instruction in United
States v. Hopkins, 518 F.2d 152, 155 (3d Cir. 1975); see also
United States v. Jackson, No. 86-388, 1987 WL 6881, at *2-3
(E.D. Pa. Feb. 19, 1987) (explaining that failure to allow
defendant to impeach prosecution's main witness did not provide
basis for new trial in part because the informant instruction
was given).

in connection with the testimony of the only witness who
identified Mr. Boston as the shooter." Objs. 35. However, for
the reasons explained below, this argument fails.

### i.   Arguable merit

To decide whether Mr. El-Shabazz rendered ineffective
assistance by failing to request the informant instruction, we
look to Pennsylvania law. See Everett v. Beard, 290 F.3d 500,
(3d Cir. 2002) (analyzing Pennsylvania law on habeas review to
determine whether an attorney was ineffective for failing to
object to certain instructions). Under Pennsylvania law, to
present an arguably meritorious claim for ineffective assistance
in failing to request a non-standard jury instruction, the
instruction must (1) be "a proper articulation of the law,"
Commonwealth v. Slyman, 483 A.2d 519, 528 (Pa. Super. Ct. 1984),
and (2) be warranted under the facts of the case. See
Commonwealth v. D'Ambro, 456 A.2d 140, 142 (Pa. 1983)
(explaining that counsel is not ineffective for failing to
pursue a jury instruction that was unwarranted under the facts
of the case). The informant jury instruction that Petitioner
argues should have been requested is not commonly used in
Pennsylvania practice, but the PCRA court entertained

Petitioner's argument that it may be analogized to Pennsylvania's Standard Instruction 4.06.[9] See R. & R. at 39.

However, both the Devitt and Blackmar instruction and Pennsylvania's Standard Instruction 4.06 "involve cautioning the jury about the potential bias of a witness who is not an accomplice but has a penal interest at stake, in addition to paid testimony by the government." Id.

As such, the PCRA court explained, "in order for the Devitt & Blackmar Instruction to be warranted by the facts of this case, Smith's penal interests must have remained intact at trial. That is, there must have been a legal consequence upon breach of his plea agreement." Id.

Here, Mr. Smith's penal interests were not intact at trial. Mr. Smith and the State of Delaware had entered into a cooperating plea agreement in an unrelated case. Id. at 36. A portion of the plea agreement, which was read to the jury during Petitioner's trial, stated that "[Mr. Smith] agrees to testify truthfully at the trial of Ali Boston in Delaware County, Pennsylvania. This plea agreement shall be declared null and

---

[9]     Pennsylvania Standard Criminal Jury Instruction 4.06 provides as follows: "You should examine closely and carefully and receive with caution the testimony of [name of witness] [any witness] if you find that he or she [was previously hypnotized] [admitted that he or she committed perjury at another trial] [give specific situation]." Pa. Suggested Stand. Crim. Jury Instr. § 4.06 (2d ed., 2010 Supp.)(brackets in original).

void and nolle prosequi charges will be reinstated should [Mr. Smith] fail to satisfy this condition." Id. Mr. Smith explained that he understood this provision of his plea agreement to mean "[i]f I don't come up here all my charges will be brought back up on me." Id. On direct examination, Mr. Smith stated that the Commonwealth arrested him under a material witness warrant in advance of trial. Id. at 37. He also acknowledged on cross-examination that his father pledged their family house in order to post bail and that he understood that his father would lose the house if Mr. Smith failed to testify. Id.

Nevertheless, at Petitioner's trial, Deputy Attorney General James Apostolico testified that the plea agreement could no longer be enforced and Delaware courts lacked criminal jurisdiction because Mr. Smith had completed his probation at that time. Id. at 36. Therefore, the instruction had no applicability.

The fact that the plea agreement was enforceable against Mr. Smith when he testified at the first trial is not of legal consequence. As the PCRA court explained,

> [r]esearch has not located any case, and Boston cites none, that expressly holds that Delaware courts retain jurisdiction to enforce a plea agreement against a criminal defendant who has entirely completed his judgment of sentence. Neither has research located any Delaware case, nor has Boston cited any, expressly holding that a criminal defendant who agrees to testify at trial implicitly agrees, under the

33

covenants of good faith and fair dealing, to also
testify on retrial.

Id. at 40. Therefore, the PCRA court determined and Judge Angell
agreed that Petitioner's objection on these grounds was without
merit. Id. at 40, 42.

### ii.   Reasonableness

Even if the instruction were applicable to
Petitioner's case, it is unlikely that failure to request the
instruction falls below an objective standard of resonableness.
The PCRA court noted that the Devitt and Blackmar instruction
"has fallen out of favor in more recent years" and Petitioner
"has presented no expert testimony whether its use is supported
by reasonable, then-existing standards of national or local
practice." Id. at 40.

Adopting the PCRA court's opinion, the Superior Court
of Pennsylvania added that while expert testimony on then-
existing standards of national or local practice is not
necessarily "mandatory" in all cases, Petitioner nevertheless
failed to demonstrate any prejudice. Id. at 42.

Moreover, a petitioner "must overcome the presumption
that, under the circumstances, the challenged action might be
considered sound trial strategy." United States v. Gray, 878
F.2d 702, 710 (3d Cir. 1989). This presumption is overcome by
showing either that counsel's "conduct was not, in fact, part of

a strategy or by showing that the strategy employed was
unsound." Thomas v. Varner, 428 F.3d 491, 499-500 (3d Cir.
2005). When the record does not disclose counsel's actual
strategy, the presumption is rebutted by a "showing that no
sound strategy . . . could have supported the conduct." Id. at
500. Moreover, under the Strickland standard, counsel cannot be
found ineffective for failing to raise a claim that is without
merit or is futile. See Premo v. Moore, 562 U.S. 115, 124 (2011)
(determining that counsel's representation was adequate under
Strickland where the claim would have been futile); United
States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can
be no Sixth Amendment deprivation of effective counsel based on
an attorney's failure to raise a meritless argument.").

Here, Mr. El-Shabazz, during the PCRA hearing,
explained that he did not request the instruction because he did
not believe Mr. Smith qualified, as the government did not pay
money for Mr. Smith's testimony. R. & R. at 37. The PCRA court
also found that:

> Attorney El-Shabazz anticipated that the
> prosecution would highlight Smith's completed
> probation to the jury in order to buttress his
> credibility. For that very reason, Attorney El-Shabazz
> thought it better to focus the jury's attention on how
> the Commonwealth procured Smith's presence at trial
> under the material witness warrant and the detriment
> to Smith's father by pledging the family's home to
> post bail. Attorney El-Shabazz viewed these facts as
> more persuasive of the Commonwealth's immediate

35

> influence over Smith and, accordingly, his summation
> matched what he developed on cross-examination.

Id. Additionally, the PCRA court determined that Mr. El-Shabazz

made the professional assessment that the general credibility

charge and the "false in one, false in all" instruction given by

Judge Wright was the most effective means to undermine Mr.

Smith's credibility. Id. at 37-38.

      Therefore, because Petitioner cannot overcome the

strong presumption that Mr. El-Shabazz's actions were considered

sound trial strategy, Petitioner cannot satisfy the

reasonableness prong of the Strickland standard.

iii.    Prejudice

      Even if Petitioner were to satisfy the reasonableness

prong, his argument would still fail under the prejudice prong

of the Strickland standard. Petitioner contends "there is no

reasonable basis for a reasonable attorney not to request an

informant instruction," which is "especially crucial where, as

here, the informant's testimony is not corroborated." Objs. 36.

Indeed, "[a]n informant instruction is necessary when the

informant's testimony is uncorroborated by other evidence."

United States v. Luck, 611 F.3d 183, 187 (4th Cir. 2010); see

also Commonwwealth v. Nolen, 634 A.2d 192, 196 (Pa. 1993)

(holding that trial court's error in refusing to permit cross-

examination of informant regarding bias was harmless where

36

informant's testimony was corroborated by other witnesses).

However, that is not the case here.

To support his contention that Mr. Smith's testimony
is uncorroborated, Petitioner cites conflicting witness
testimony as to the shooter's clothing. See Objs. 36 (comparing
testimony of two witnesses, Mr. Hammond and Mr. Hawkins).
However, the PCRA court refused to conclude that the
Commonwealth's case consisted only of Mr. Smith's testimony. R.
& R. at 41. As the PCRA court explained,

> [a]lthough he originally linked Boston to the crime,
> Detective Charles List independently corroborated the
> same by interviewing Boston, who admitted his presence
> and involvement in a bar-fight at Dixon's Lounge in an
> audiotaped statement. This is not a case where
> physical evidence or inculpatory statements by a
> criminal defendant, tying him to the scene of the
> crime, are lacking and the jury is only left with the
> purportedly "corrupt" testimony of a government
> informer. Significantly, Detective List finally
> established a connection between the name of the
> shooter and the man on the surveillance videotape
> identified as the shooter by eyewitness Albert
> Hammond, who had no connection with Smith. As such,
> even if the jury disbelieved all of Smith's testimony,
> it has no bearing on the credibility of Hammond,
> Detective List, or other eyewitnesses who gave general
> descriptions of the man from the indoor bar-fight more
> or less consistent with Boston's appearance. Whatever
> bias Smith may have had, there is no reasonable
> probability that it extended to the others.

Id.

The PCRA court thus concluded that it could not be
said that Mr. Smith's testimony "supplies the only strong
evidence of guilt." Id. (citing United States v. Holmes, 229

F.3d 782, 788 (9th Cir. 2000)) (emphasis added by the PCRA court).

Judge Angell agreed and determined that the state courts neither contradicted nor unreasonably applied federal law. Id. at 42. Upon consideration of Petitioner's Objections, this Court denies Petitioner's ineffective assistance of counsel claim on these grounds.

      c.    Failure to object to the testimony of Detective List and witness Jesse Estes under the Confrontation Clause of the Sixth Amendment of the U.S. Constitution

Petitioner further contends that counsel was ineffective for failing to object to Detective List's testimony and Jesse Estes's testimony under the Confrontation Clause. Pet. 2. Specifically, Petitioner alleges that the statements of the two witnesses at trial were testimonial hearsay in violation of the Confrontation Clause under Crawford v. Washington, 541 U.S. 36 (2004). Id.

First, Petitioner looks to Detective List's testimony at trial. During the Government's examination, the following exchange occurred:

> Q. Now going back to your investigation, from the time that you speak to Mr. Hammond until you speak to Kendall Smith, what if anything, did you do, Detective, in this investigation?
>
> A. What were we doing during that period of time? Interviewing people.

38

Q. And specifically what people were you interviewing?

A. Friends of the decedent's.

Q. And were they able to provide you with any information?

A. No, they could not.

Q. Did you attempt to track down other patrons in the bar?

A. Yes. We reviewed the tape several times and had shown it to several different people to see if we could identify anyone.

Q. How about 911 records? Did you-were you able to trace those back to a person?

A. Yes. I think we did ask that all 911 records be forwarded to us.

Q. And as a result of that did there come a point and time when you spoke to an individual by the name of Darlene Voight[ph]?

A. I don't recall speaking to her.

Q. And after interviewing all of these witnesses were you able to ascertain who the shooter was in [Dixon's] that night?

A. Yes. Mr. Boston.

Q. The-when I say at that point and time I'm referring to after you had interviewed the decedent's friends and the patrons of the bar.

A. Repeat your question, please?

Q. After you spoke to-you said you interviewed the decedent's friends and you attempted to track down other patrons in the bar and interview them. My question was, at that point and time were you able to identify who the shooter was?

A. No.

Q. Were you able to get any identifying information on the shooter?

A. No.

R. & R. at 43. (emphasis and alteration added by the PCRA court). Attorney El-Shabazz never objected. Id.

Second, Petitioner looks to the testimony of Jesse Estes, the owner of Dixon's Lounge. During the Government's examination, the following exchange occurred:

Q. And while you were standing there with the [Petitioner], how did the [Petitioner] appear to you?

A. Well, he was winded like I said, you know.

Q. And at that time did you hear anyone say anything?

A. Yes.

Q. What did you hear?

A. I heard someone saying he's go-somebody said, "He's got a gun."
. . .

Q. *** You don't know who they were talking about when they said [that], correct?

A. No.

Q. And did you see a gun?

A. No.

Id. at 44 (bracketed alterations added by the PCRA court). As explained below, because Petitioner cannot show that either of these claims are arguably meritorious, they cannot succeed.

40

i.    Arguable merit as to Detective List's testimony

Petitioner's claim as to Detective List's testimony does not present an arguably meritorious issue. Under Crawford v. Washington, 541 U.S. 36 (2004,) and its progeny, evidence may be inadmissible under the Confrontation Clause where it is (1) hearsay, (2) by an unavailable declarant not previously subject to cross-examination by the defendant, and (3) a "testimonial" statement. See United States v. Price, 458 F.3d 202, 209 n.2 (3d Cir. 2006) (citing Davis v. Washington, 547 U.S. 813 (2006)). To be "testimonial," the statement must be the product of either a police investigation or comparable circumstances intended "to establish or prove past events potentially relevant to later criminal prosecution." Davis, 547 U.S. at 822.

Here, Detective List's testimony does not fall within the confines of Crawford. On review, the PCRA court found, and Judge Angell in her R. & R. agreed, that Detective List's testimony cannot be considered hearsay. R. & R. at 45-47. Although the Government prefaced its question with "after interviewing all of these witnesses," the question was immediately clarified. Id. at 45. Detective List specifically stated that none of the witnesses could identify the shooter and the witnesses' interviews were not the sole reason for his identification. Id. at 46.

41

Petitioner objects to the R. & R. on the grounds that Detective List's testimony "repeats accusations made by declarants who did not testify subject to cross-examination" and thus constitutes hearsay "because there is no other explanation for eliciting the declarants' statements" than for their truth. Objs. 26-27. Petitioner also argues that Detective List's statements were "testimonial" because "reasonable declarants would have had to expect that the statements would be used in court." Id. at 27.

However, Petitioner's objections cite only a particular portion of Detective List's testimony, omitting the clarifying question from the Government after which Detective List explained that it was not the witnesses' statements that evening that allowed him to conclude Petitioner was the shooter. Compare Objs. 27, with R. & R. at 43. Instead, Detective List stated that he reached his conclusion in the context of the entire investigation.

Moreover, even though the witnesses' statements were testimonial under Crawford because they were given in furtherance of a police investigation, Detective List did not offer those statements for the truth of the matter, and the context of the examination reveals as much. Detective List's only assertion was that, based on his entire investigation, he concluded Petitioner was the shooter. This assertion was, as the

42

PCRA court explained, "not an out-of-court assertion by an unavailable witness but, rather, an in-court assertion by an available witness." R. & R. at 46 (emphasis in PCRA court opinion).

The PRCRA court also noted that the Assistant District Attorney's testimony at the PCRA hearing supports the conclusion that there is no Crawford issue of merit. The Assistant District Attorney stated that she intended her questioning of Detective List to show the jury "what he learned as a result of his investigation." Id. at 43, 46 (emphasis in PCRA court opinion). "Moreover, she intended to rebut a claim by the defense that investigators did a poor job and failed to interview other witnesses." Id. at 43.

Finding the Assistant District Attorney's "explanation reasonable and her testimony credible and supported by the trial record," the PCRA court concluded that any objection offered by Mr. El-Shabazz to Detective List's testimony under the Confrontation Clause would have been "baseless." Id. at 43, 45. This Court agrees, finding the challenge as to counsel's failure to object to Detective List's testimony is without merit.

ii.    Arguable merit as to Jesse Estes's
testimony

Petitioner's contention as to Jesse Estes's testimony
is likewise without merit. Petitioner argues that Mr. Estes's
statement that he heard someone say, "He's got a gun," was
testimonial hearsay in violation of Crawford. Objs. 29. However,
as the PCRA court explained and Judge Angell agreed, the
statement "He's got a gun" is hearsay but falls within the
exception for excited utterances. R. & R. at 46 (citing Pa. R.
Evid. 803(2)). And despite recognizing that "courts have
grappled with the issue of whether excited utterances, made to
police at the scene of the crime, would qualify as testimonial
statements," id. (quoting Commonwealth v. Gray, 867 A.2d 560,
574 (Pa. Super. Ct. 2005)), the PCRA court reasoned that "[t]his
is an excited utterance captured by a surveillance camera and
without the presence of police officers or any indication
whether the declarant was aware of being videotaped." Id.

In his Objections to the R. & R., Petitioner relies on
cases that are not applicable to the facts of this case. For
example, Petitioner relies on State v. Basil, 998 A.2d 472 (N.J.
2010), wherein an unidentified informant told the police that
the defendant pointed a shotgun at her. Objs. 29. Petitioner
likewise cites United States v. Hinton, 423 F.3d 355 (3d Cir.
2005), for the proposition that "accusations made to the police

44

are 'testimonial' and covered by the Confrontation Clause." Objs. 30. Both cases involve statements made by a declarant directly to the police, and Mr. Estes's testimony that someone said "He's got a gun" during the bar fight does not relate.

Here, the out-of-court declarant's excited utterance was not made to the police. No police were present or thought to be present at the time the statement was made. As the PCRA court effectively summarized,

> [t]o succeed, Boston must show how an excited utterance is the functional equivalent of a police interrogation, where made at a private tavern, in the presence of a bartender and videotaped by a surveillance camera which may not have been noticed by the declarant. He cannot do so. Under these circumstances, no reasonable declarant would recognize that his or her statements could be used in subsequent, criminal proceedings. Therefore, the challenged statement is non-testimonial under Crawford and Boston's claim to the contrary lacks arguable merit.

R. & R. at 46.

Because there is no arguably meritorious issue as to counsel's failure to object to Detective List's or Jesse Estes's testimony at trial, the Court need not determine whether Petitioner could prevail under the remaining Strickland analysis. In sum, the state courts neither contradicted nor unreasonably applied federal law in denying Petitioner's claims on these grounds.

45

d.   <u>Failure to object to prosecutor's summation</u>

Petitioner next argues that counsel was ineffective for failing to object to the prosecution's closing argument. Specifically, Petitioner states that Mr. El-Shabazz should have objected to (1) the prosecutor's statements that Petitioner "left that bar armed with a gun, revenge on his mind and he went out and he shot" [hereinafter, "the gun statement"], and (2) the prosecutor's own determination, which she shared with the jury, whether Mr. Smith complied with his plea agreement by testifying truthfully was irrelevant [hereinafter, "the truthfulness statement"]. Objs. 31.

Judge Angell recommended that Petitioner should not succeed on these grounds because they are without merit. R. & R. at 50. Petitioner now objects to Judge Angell's recommendation, arguing that the gun statement asked the jury to draw unreasonable inferences and that the truthfulness statement was an expression of the prosecutor's personal opinion. Objs. 31.

"A prosecutor's comments can create reversible error if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>United States v. Lee</u>, 612 F.3d 170, 194 (3d Cir. 2010) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)). "It is not enough that the prosecutor's remarks were undesirable or even universally condemned," <u>United States v. Liburd</u>, 607 F.3d 339, 344 (3d Cir.

46

2010) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)),

because the focus is on the fairness of the trial, not the

prosecutor's culpability. Id. (citing Smith v. Phillips, 455

U.S. 209, 219 (1982)). Moreover, it is well established that

prosecutors may argue all reasonable inferences from the record,

Commonwealth v. Joyner, 365 A.2d 1233, 1237 (Pa. 1976), giving

fair responses to defense strategies, including those developed

on cross examination, Commonwealth v. Solomon, 25 A.3d 380, 386-

87 (Pa. Super. Ct. 2011).

First, Petitioner contends Mr. El-Shabazz should have

objected to the gun statement. Objs. 31. During the PCRA

hearing, Mr. El-Shabazz explained that he did not object to the

gun statement, because it fit squarely within the Commonwealth's

theory of the case established throughout the trial and was

sufficiently supported by circumstantial evidence.[10] R. & R. at

48. As the PCRA court explained, based on the evidence

presented, a reasonable jury could infer that Petitioner had a

---

[10]     The Assistant District Attorney explained to the PCRA
court that the surveillance video from Dixon's Lounge supported
her arguments by depicting Petitioner with one hand in the air
and his other hand blocked by the body of Jesse Estes, at which
time the unknown declarant yells that someone has a gun. See R.
& R. at 48. Moreover, in the Assistant District Attorney's view,
"that eyewitnesses could not testify whether Boston had a gun
inside Dixon's Lounge does not destroy the inference that he
did, since he is the only person identified as being outside of
that bar shooting and killing Shawn Russell, wounding Ricardo
Johnson and Charles Ross." Id. (internal quotation marks
omitted).

gun while inside the bar. Id. at 50. "These inferences are not destroyed by the absence of direct evidence that Boston had a gun inside the bar. Such is the nature of circumstantial evidence." Id. Moreover, Mr. El-Shabazz found it unnecessary to object, because the jury was going to be charged that the closing argument was not evidence regardless of whether the objection had been raised. Id. at 48. Therefore, the PCRA court found, and Judge Angell agreed, that Petitioner's claim as to the gun statement lacked merit.

Second, Petitioner contends Mr. El-Shabazz should have objected to the truthfulness statement. During the PCRA hearing, Mr. El-Shabazz explained that he did not object to the truthfulness statement because he thought it to be "a fair response to what [he] said in [his] closing." Objs. 32. The PCRA court found "that [Assistant District Attorney] made these statements in response to Attorney El-Shabazz's summation, where he reminded the jury about Deputy Attorney General Apostolico's admission that those who will determine whether Smith testified truthfully are Delaware County prosecutors." R. & R. at 49. The Assistant District Attorney simply pointed out that it "does not matter whether she has to determine if Smith testified truthfully" because he "was no longer under a threat of prosecution upon breach of his plea agreement." Id. at 50.

The PCRA court also found valid Mr. El-Shabazz's explanation that it would have been a strategic nightmare to object because it would have made him look bad in front of the jury if the judge had ruled that the prosecutor's statements were a fair response, and it would have served only to emphasize unfavorable facts to the jury. Id.

Because the PCRA court found that the Assistant District Attorney argued reasonable inferences from the record and gave fair responses to defense strategies in her summation, the court determined that Petitioner failed to raise a meritorious issue. Id. at 49. Without a meritorious issue, the PCRA court did not continue the Strickland analysis. Id. at 49-50. On review, Judge Angell concluded that "[t]he rejection of this claim by the state courts is certainly reasonable, and, in doing so, they neither contradicted nor unreasonably applied federal law. Mr. Boston is not entitled to federal habeas relief on this issue." Id. at 50. This Court agrees and denies the claim.

    B.   Due Process Clause Grounds

Petitioner additionally asserts that his conviction violated the Due Process Clause of the Fourteenth Amendment because there was no evidence supporting the two convictions for aggravated assault. Id. at 55.

49

To assess a sufficiency of the evidence claim, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Jackson v. Byrd, 105 F.3d 145, 149 (3d Cir. 1997) ("[F]ederal courts in habeas corpus proceedings . . . look to the evidence the state considers adequate to meet the elements of a crime governed by state law."). The prosecution is to be given the benefit of all reasonable inferences drawn from the evidence. Commonwealth v. Widner, 744 A.2d 745, 751 (Pa. 2000). And "circumstantial evidence alone can constitute sufficient evidence to support a conviction." Commonwealth v. Rucci, 670 A.2d 1129, 1136 (Pa. 1996).

The general rule is that "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Simmons, 662 A.2d 621, 630 (1995). Given this rule, the verdict should not be reversed unless it is "so contrary to evidence as to shock one's sense of justice." Id.

Under Pennsylvania law, the crime of aggravated assault requires a person to have attempted to cause serious bodily injury to another. 18 Pa. Cons. Stat. § 2702(a)(1).

50

"Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. Cons. Stat. § 2301. The crime of aggravated assault does not require proof that the serious bodily injury was in fact inflicted, only that an attempt was made to cause the injury. See Commonwealth v. Rosado, 684 A.2d 605, 608 (Pa. Super. Ct. 1996); Commonwealth v. Elrod, 572 A.2d 1229, 1231 (Pa. Super. Ct. 1990).

In her R. & R., Judge Angell agreed with the state courts that a rational fact finder could have found the essential elements of aggravated assault beyond a reasonable doubt. R. & R. at 57. Petitioner now claims the courts failed to properly apply the standard, ignoring the "line of demarcation between proof beyond a reasonable doubt and speculation." Objs. 38.

The PCRA court explained that forensic testimony presented at trial showed there were two bullet casings and two bullets that matched each other, with only one shooter ever mentioned. R. & R. at 56. The PCRA court reasoned that if there was sufficient evidence to conclude Petitioner shot and killed Shawn Russell--as was found--then the jury was entitled to infer (1) Petitioner was the only shooter; (2) his shots were the ones that also hit Ricardo Johnson and Charles Ross; and (3) because

51

Mr. Johnson and Mr. Ross were the men who had been fighting with Petitioner inside the bar, there was sufficient evidence of intent to inflict serious bodily injury. Id. The Superior Court of Pennsylvania agreed with the PCRA court's assessment, adding that the circumstantial evidence of Petitioner's culpability was adequate. Id. at 57.

In his Objections to Judge Angell's R. & R., Petitioner contends that the state courts' reasoning does not stand because "there were two shell casings but three people were shot," and thus "[t]here was no evidence that Mr. Boston shot the victims of the aggravated assaults as opposed to someone else." Objs. 38.

During trial, Trooper John Hoy of the Pennsylvania State Police was asked about one discharged metal bullet and two discharged cartridge casings that he had examined. R. & R. at 6. As a firearms and tool mark examiner, he determined that the casings had discharged from the same firearm. Id. He was thereafter asked to examine a second bullet, and he determined that both bullets had been discharged from the same firearm. Id. at 6. But he could not say definitively that there had been only one weapon fired. See Mem. of Law in Opp'n to Pet. Seeking Federal Habeas Corpus Relief 11, ECF No. 9-1.

Nevertheless, the facts are to be viewed in the light most favorable to the verdict winner, Widmer, 744 A.2d at 751,

and circumstantial evidence alone can be sufficient to support the requisite elements for a conviction, <u>Rucci</u>, 670 A.2d at 1136.

Here, Ricardo Johnson, one of the victims of the aggravated assault, testified at trial that he heard gunshots during the incident in question, and when asked how many gun shots he thought he heard, he said he thought he heard three. R. & R. at 4; <u>see also</u> Objs. 37 (referring the Court to pages 1-9 of the R. & R. for the facts). Johnson also testified that he heard the first gunshot while getting up from the ground and two more within a matter of seconds. R. & R. at 35. Another witness, Kenneth Hawkins, said he heard two shots but he did not fully remember how many shots were fired, only that it was more than one. <u>Id.</u> at 7. But regardless of the number of shots heard or number of casings retrieved, it remains that only one shooter was seen and only one shooter was identified. <u>Id.</u> at 56. Moreover, Mr. Johnson and Mr. Ross were the men who had been fighting with Petitioner inside the bar prior to the shootings. <u>Id.</u>

As the PCRA court found and Judge Angell agreed, this cumulative circumstantial evidence was sufficient for a rational factfinder to have found the essential elements of the aggravated assault crime proven beyond a reasonable doubt. <u>Id.</u> at 57. Therefore, the state courts did not contradict nor

unreasonably apply federal law in denying this claim, and Petitioner is not entitled to federal habeas relief on this issue.

## V.    CERTIFICATE OF APPEALABILITY

A petitioner seeking a Certificate of Appealability must demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has not made a substantial showing of the denial of his constitutional rights. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Therefore, the Court will not issue a Certificate of Appealability.

## VI.  CONCLUSION

For the reasons discussed above, the Court approves and adopts Judge Angell's Report and Recommendation, overrules Petitioner's objections thereto, and denies the Petition for a Writ of Habeas Corpus without an evidentiary hearing. The Court will not issue a Certificate of Appealability.